UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:12-cr-00133-SEB-TAB |
| | ) | |
| JOSHUA MILLER, | ) -29 | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

On May 5, 2020, defendant Joshua Miller, an inmate at FCI Terre Haute, filed a motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 1902.[1] Mr. Miller is currently serving a 120-month sentence for conspiracy to possess with intent to distribute 100 grams or more of heroin. Dkt. 1342, p. 1. He is seeking immediate release due to the health risks arising from the COVID-19 pandemic. For the reasons explained in this Order, this motion, dkt. [1902], is **denied**.

**I.
BACKGROUND**

Mr. Miller is 41 years old. Dkt. 1902, p. 3. His criminal history began at age 18, and he has spent most of his adult life incarcerated. *Id.* at 11, 14. He has five previous misdemeanor convictions and three previous felony convictions, including a conviction for aggravated battery resulting in serious bodily injury. *Id.* at 11-13. While Mr. Miller was on probation for aggravated battery, he was convicted of armed robbery. *Id.* at 12-13. His probation was revoked, and he was sent back to the Indiana Department of Correction ("IDOC") to serve the remainder of his sentence.

---

[1] Mr. Miller originally filed his motion pro se. Retained counsel appeared to represent him, dkt. 1905, and filed a supporting memorandum on his behalf, dkt. 1906. Counsel later withdrew, dkts. 1907, 1922, and Mr. Miller filed a pro se reply, dkt. 1923.

*Id.* at 12-13. *Id.* After serving a period of incarceration on his armed robbery conviction, Mr. Miller was released to probation on December 8, 2011. *Id.* at 13.

On July 13, 2012, while he was still on probation for armed robbery, Mr. Miller was arrested and later charged with conspiracy to possess with the intent to distribute 100 grams or more of heroin. *Id.* at 8. The conspiracy was directed by gang members incarcerated at IDOC facilities. *Id.* Mr. Miller's role was to travel with a group of co-conspirators to Chicago, purchase heroin, and transport the heroin back to Indiana. *Id.* On October 27, 2014, he pleaded guilty and received an executed sentence of 120 months at the Bureau of Prisons ("BOP").[2] Dkt. 1342, p. 1. He is scheduled to be released to the Volunteers of America on July 23, 2020, dkt. 1913 at 6, and the BOP website lists his release date as April 23, 2021.

Since his incarceration, Mr. Miller has been found guilty of one disciplinary offense for possession of an illegal substance. Dkt. 1913-2.

According to his medical records, Mr. Miller has a history of asthma. Dkt. 1913, p. 1. He takes mometasome furoate (a corticosteroid) and albuterol (a beta agonist) but does not report inhaler use more than once a week. *Id.* On March 24, 2020, Mr. Miller told the medical staff at FCI Terre Haute that he "has no problem with exercise or ability to function," and does not have any "complaints of persistent symptoms of chest tightness, wheezing, shortness of breath" or nighttime awakenings. *Id.*

According to the Centers for Disease Control and Prevention ("CDC"), individuals with moderate to severe asthma "might be at an increased risk for severe illness from COVID-19."[3] In the United States, the severity of a patient's asthma is commonly assessed in light of the severity

---

[2] Mr. Miller's probation violation on his armed robbery conviction was dismissed in 2017 due to his extended incarceration in federal custody. *See* Indiana Criminal Case. No. 79D02-0605-FB-000029.
[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html.

of daytime symptoms, nighttime symptoms, and lung function before the initiation of treatment.[4] An alternative approach is to assess the severity of these and other symptoms when the patient is clinically stable. *Id.* A third approach is to consider the level of medication required to maintain a stable condition. *Id.* Under this approach, a patient whose asthma is well-controlled with occasional use of short-acting beta agonists and corticosteroids are considered to have mild asthma. *Id.*

At FCI Terre Haute, there are currently no inmates or staff members who have tested positive for COVID-19.[5] One inmate and one staff member at FCI Terre Haute have recovered from COVID-19. *Id.* No inmates or staff members at FCI Terre Haute have died from COVID-19. *Id.*

## II.
## DISCUSSION

Mr. Miller argues that the COVID-19 pandemic, his asthma, and his impending release to a halfway house combine to create "extraordinary and compelling circumstances" justifying his early release. Dkt. 1906. He further argues that his early release would not pose a danger to the community and that the time he has already served adequately reflects the seriousness of the offense and the need to deter future illegal conduct. *Id.*

In response, the Government argues that Mr. Miller has not established extraordinary and compelling circumstances justifying early release. Dkt. 1913. The Government notes that there are currently no confirmed cases at FCI Terre Haute and that Mr. Miller's asthma does not satisfy the CDC Guidelines for individuals who may be at an increased risk of developing severe illness from

---

[4] *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1069088/.
[5] https://www.bop.gov/coronavirus/ (Last checked July 20, 2020).

COVID-19. *Id.* The Government also argues that granting Mr. Miller's motion for early release would pose a danger to the community and diminish the seriousness of the offense. *Id.*

>  18 U.S.C. § 3582(c) provides in relevant part:
>
> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).[6]

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[7] courts have universally

---

[6] The Government does not argue that Mr. Miller failed to exhaust his administrative remedies. Thus, even if Mr. Miller has not exhausted his administrative remedies, the Government has waived any such failure. See United States v. Cox, No. 4:18-cr-17-TWP-VTW-1, 2020 WL 1923220, at *3 (S.D. Ind. Apr. 21, 2020) (exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional and can be waived by the government).

[7] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018,

turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

For the reasons explained in more detail below, the Court concludes that Mr. Miller has not demonstrated extraordinary and compelling circumstances justifying his release and therefore does not need to decide whether he poses a danger to the community or whether the § 3553(a) factors weigh in favor of his release.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's

---

amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018).

capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[8] *Id.*, Application Note 1(D).

Mr. Miller does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

The COVID-19 pandemic is a serious public health crisis affecting every aspect of society. Mr. Miller argues that the circumstances of prison life place inmates generally at a greater risk of transmitting infectious diseases, including COVID-19, than the general population. Dkt. 1906. Nevertheless, most courts have concluded that "the mere existence of COVID-19 in society and

---

[8] The catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act to reflect the fact that defendants can now file motions directly in district court. "Accordingly, a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A).'" *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases). Such courts conclude that they have the "discretion to assess whether [a defendant] presents 'extraordinary and compelling reasons' for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement." *Id.* at *6; *see also United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 n.5 (D. Conn. Apr. 8, 2020). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, because Mr. Miller's motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020); *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (same); *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons."); *see generally United States v. Clark*¸ No. 1:09cr336-1, 2020 WL 1874140 at *8 (M.D.N.C. Apr. 15, 2020).

Mr. Miller is a generally healthy 41-year-old man. Although he suffers from asthma, his symptoms are well-controlled with occasional use of albuterol (a beta-agonist) and metasoma furoate (a corticosteroid). Dkt. 1913-1. Because Mr. Miller has not established that he has moderate to severe asthma, or that he has any other condition listed on the CDC Guidelines, there is no indication that he is at an increased risk of severe illness from COVID-19.[9]

Furthermore, the risk that Mr. Miller will be exposed to COVID-19 before his release is low. Although the Court recognizes the challenges of containing an infectious disease in a prison setting, FCI Terre Haute has not had a significant outbreak of COVID-19, and there is no evidence that any inmate or staff member is presently infected. Accordingly, the motion for compassionate release is **denied**.

---

[9] The CDC has advised that prolonged use of corticosteroids may cause a person to be immunocompromised and, thus, at increased risk of experiencing severe symptoms from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Mr. Miller does not argue that his use of a corticosteroid places him at risk of severe COVID-19 symptoms. In addition, there is no evidence or argument that his occasional use of metasoma furoate is the kind of "prolonged" corticosteroid use that places him at increased risk of experiencing severe COVID-19 symptoms.

## III.
## CONCLUSION

Mr. Miller has not established extraordinary and compelling circumstances to justify his early release, and his motion for compassionate release, dkt. [1902], is **denied**.

**IT IS SO ORDERED**.

Date:
      7/21/2020

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

Joshua Miller
Reg. No. 10900-028
FCI Terre Haute
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808